Bayabd,
 
 Chief Justice,
 

 charged the jury—
 

 The act of assembly (Dig. 405,) provides, that if the
 
 owner
 
 or
 
 possessor
 
 of a mill shall
 
 loilfully
 
 discharge an
 
 unusual
 
 quantity of water, or if by
 
 accident
 
 an
 
 unusual
 
 quantity of water shall be discharged, “it shall be the duty of such person or persons owning, possessing
 
 dr hawing the charge of, and residing at or near,
 
 the said mill,” to give notice to the
 
 owner, possessor
 
 or keeper, or to either of them, who may Reside at or nearest to the mill next below; and for neglecting to give such notice the
 
 ofender
 
 shall pay
 
 double damages-
 

 This act is for the preservation of mill property; and, although it does impose upon persons offending against its provisions, double the damages occasioned by their neglect to give notice, and is in this respect
 
 penal,
 
 it is a highly beneficial statute, and ought to receive a construction consistent with its object, though not in extension of its provisions.
 

 ...The act provides for two cases — a
 
 toilful
 
 and an
 
 accidental
 
 discharge of water; and it refers to three classes of persons, in reference to the duty of giving .notice, the owner, possessor and person in charge.
 

 If any person being the owner or possessor of any mill worked by water power, shall wilfully and knowingly discharge or cause to be discharged an unusual quantity of water, or if by accident an unusual quantity of water should be discharged, it shall be the duty of such person owning, possessing or having charge of and residing at or near the said mill, to eivc notice of the wilful or accidental discharge
 
 *4
 
 of such water, to the o' ’er, possessor or keeper, who may reside at or nearest to the mill n . below, &c;
 

 Upon this it is contended in behalf of the defehdant here, that the words “residing at or near the mill,’* have reference to the owner and possessor, as well as to the person in ch'áfge of thd mill, and also to a base of wilful as well as one of accidental discharge of water; arid consequently that no person being an owner or possessor of an upper mill, can be liable under this dbt even for a wilful dis-fcharge of water without notice. Unless such owner or possessor re-sldés at or near the mill. The act mu'st retieiv'e a
 
 reasonable
 
 'construction, not extending its term'ss but hot violating its object áhd making it a dead letter. The object of the law was to
 
 increase
 
 & Responsibility already existing at common law, oh the owner or possessor of an upper mill in case of the
 
 toilful
 
 discharge of water, and to impose a duty, not existing at conltaon law, on the owner and possessor,
 
 and also on the 'person in charge,
 
 when Such perSons respectively resided at or near the mill, to give notice of an
 
 accidental
 
 discharge of watch In such case the qualification of residing at or near the mill is necessary, for ’otherwise the persoh’s ‘charged with the duty of giving notice; not béíhg informed 'of the accidental discharge-, ’wbuld n'ot be able to perform it. But to extend this to thd ’case of
 
 wilful
 
 dis'charge of water by the owner or possessor, would leave the ‘ebtomoh law liability Of ah Owner as it was, and extend no remedy except in the single cáse of a residence at or near the mill; and if neither the Owner, possessor or person in 'charge resided at or near the mill, the á'ct would be a dead letter; and would not extend 'even to the case where all three owner, possessor and person in teharge, wilfully discharged the water withoht notice-.
 

 We think this would be an unreasonable construction of the law> and 'sü'ch as we are not authorized to give it-.
 

 In our view, the owner of an upper mill
 
 wilfully
 
 discharging an Unusual quantity of water is bound by this a’ct to give notice to the mill below; and even if his mill were in thd possession or charge of ahother, although this might also impose on 'such tenant or per1 'son in charge the duty of giving “notice, this “would not excuse the owner unless notice was given by one of the others-.
 

 It is admitted that the defendant is the
 
 maker
 
 Of the upper mill; and resides -at the distance Of three or four miles ík'óm it; whether the mill is in his occupation or that of a tenant is for the jury on the {>roof, but may not be of mübh consequence Under oUr view of the aw now stated-, if'the jury should also be of opinion that there was
 
 *5
 
 án unusual discharge of water by the defendant’s orders; otherwise thbt question will be extremely impoftaht.
 

 Ridgely, Rogers, jr.,
 
 and
 
 Bates
 
 for plaintiff.
 

 Cullen
 
 and
 
 Booth
 
 for defendant-.
 

 It is also proved that the plaintiff is the owner of the lowef mills; the sole owner of the sáw-mill and part ownér of the grist mill; ánd that the plaintiff’s mills were swept away by a flood of water on the 29th of December last.
 

 Was this flood occasioned by the
 
 wilful
 
 di'schárgé of an
 
 unusual
 
 q'úántity of water by the defendant, Marshall; from his mills, by his own act or orders? Whát is ah unusual discharge of water must be ascertained by reference to the ordinary use and wastage; that is, the usual discharge of water'; the natural supply of water afforded by the stream, the quantity used and sUrplus; having reference’to the condition of both mills, and the common mode of discharging water from 'one upon the other. On this question the jury should also recur to the proof in reference to the head of water iñ Marshall’s pond, at and before the 29th of December; the head of water in Mcllvaine’s pond; the volume of water discharged as well áé it cab be estimated by the number and size of .gates up, and the risé in the pond below; the conditiob of Mcllvaine’s mill-dam, pier-head and flume; and judge from all these whether the damage wás occasioned by the sending down of an unusual quantity of water, or arose from the defective 'construction of bad condition of the plaintiff’s mill-dám; flume, sheeting or other w'ofks.
 

 And if the jUry shall think the plaintiff Untitled to recover, they will assess his damages áccording to his interest in the property; and the amount so found will be
 
 doubled
 
 by the 'court as required by the law.
 

 The jury returned a verdict for plaintiff for $200 which, on mo1 lion of his counsel, was doubled.